PARISH OF JEFFERSON

VERSUS

GAIL FAYARD & CHERYL KIRSCH

NO. 24-CA-432

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 849-334, DIVISION "B"
HONORABLE R. CHRISTOPHER COX, III, JUDGE PRESIDING

February 26, 2025

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**AFFIRMED**
    **SMC**
    **JGG**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
GAIL FAYARD AND CHERYL KIRSCH
    Robert T. Garrity, Jr.
    Pierre W. Mouledoux

COUNSEL FOR PLAINTIFF/APPELLEE,
PARISH OF JEFFERSON
    Jourdan J. Mohamad

**CHEHARDY, C.J.**

Defendant, Gail Fayard, appeals the trial court's August 1, 2024 judgment, as amended on December 4, 2024, which affirmed and upheld a decision rendered by the Administrative Hearing Officer, Charles Cusimano, II, for the Bureau of Administrative Adjudication ("BAA"), on November 15, 2023, and later signed on November 28, 2023, in favor of plaintiff, Parish of Jefferson (the "Parish"). For the reasons that follow, we affirm the BAA's ruling.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 23, 2022, Jefferson Protection and Animal Welfare Services ("JPAWS") received a complaint of animal nuisance at 1405 Zuma Avenue in Metairie, Louisiana. In response to the complaint, animal control officers went to the residence on September 9, 2022, and spoke with the property owner, Ms. Gail Fayard.[1] At that time, Ms. Fayard was issued a warning citation for animal nuisance under Jefferson Parish Code of Ordinances ("JPCO"), Sec. 7-173.

As per JPAWS' procedure, a follow-up inspection was conducted on October 28, 2022, to determine if Ms. Fayard was in compliance. Animal control officers found that violations still existed. On December 5, 2022, a third inspection was conducted by JPAWS, where it was determined that violations of JPCO Sec. 1-173 continued to exist.

Ms. Fayard appeared for an administrative hearing at BAA before Hearing Officer Charles Cusimano, II, on December 14, 2022. At that time, she entered into a consent agreement with the Parish, wherein she was found to have violated JPCO Section 7-173, and was assessed hearing costs in the amount of $150.00 and a fine in the amount of $250.00. Ms. Fayard agreed to obtain collars and rabies tags for any and all cats that were being fed on her property, and to restrict the

---

[1] It is noted that Cheryl Kirsch was also named as a defendant in this matter, but she never made an appearance. It appears that she was added merely as a co-property owner of 1405 Zuma Avenue, Metairie, Louisiana.

feeding times of the cats to once in the morning and once in the evening, with all bowls and/or containers to be picked up by 9:30 a.m. and 6:30 p.m., respectively, in both the front and back yards. Ms Fayard further consented to allowing JPAWS to inspect both the front and back yards of her property to verify compliance in regards to feeding times. A consent order containing these agreed upon provisions was signed by Hearing Officer Cusimano on December 20, 2022.[2] The order also stated that "[t]he violations on this property may subject the defendants to repeat offender provisions of the [JPCO] resulting in additional/increased penalties for future violations. Inspections may be called for prior to the delay herein to verify compliance."

After the consent order was issued in December 2022, JPAWS returned to Ms. Fayard's home in February 2023 to confirm whether or not she was in compliance. It appeared at that time that she was. Shortly thereafter, however, JPAWS received a second public nuisance complaint on February 25, 2023 from Ms. Fayard's neighbor, Christina Bourgeois, who lives several houses away from Ms. Fayard. Ms. Bourgeois provided JPAWS with several video clips showing Ms. Fayard going onto the property of others and feeding cats, all in violation of the previous consent order.

JPAWS received a third public nuisance complaint on August 23, 2023, again from Ms. Bourgeois, attaching photographs and new video evidence of Ms. Fayard in violation of the consent order. Specifically, a photograph showed Ms. Fayard's cat food left unattended in her driveway, and the videos showed her walking down the street to 1305 Zuma Avenue and feeding the cats outside of that residence. In response, on August 25, 2023, JPAWS conducted an inspection of Ms. Fayard's property by Animal Control Officer, Emily Caro, who determined

---

[2]      The consent order provided that if Ms. Fayard complied with the order "in all respects, including paying the initial costs of $150.00 within 30 days of the signing of this Order, the fine shall be waived."

that Ms. Fayard was not in compliance with the December 2022 consent order. According to JPAWS, this was actually the fourth time that they had verified that Ms. Fayard was not in compliance, but since this was the third verified nuisance complaint, a notice of violation/notice of pending prosecution was posted at Ms. Fayard's property, in lieu of a citation, pursuant to JPCO, Sec. 1-175(c), indicating she was in violation of JPCO Secs. 7-173 and 7-175. The notice contained a "Warning" stating that "[y]ou have been accused of violating" the JPCO, and notified Ms. Fayard that she would be required to "appear before the Bureau of Adjudication. Fines and hearing costs may be incurred."[3] The notice identified a hearing date set for November 15, 2023, and provided the place and time of that hearing. The notice of hearing once again provided that Ms. Fayard stood accused of violating JPCO Sec. 7-173, in that her "cats were a public nuisance," and Sec. 7-175 pertaining to recurring violations.

The hearing was held before Hearing Officer Cusimano of the BAA on November 15, 2023. Ms. Fayard represented herself. Three witnesses appeared on behalf of the Parish. At the close of the hearing, based on the evidence and testimony presented, Hearing Officer Cusimano found in favor of the Parish and against Ms. Fayard. Specifically, Ms. Fayard was found to be a "recurring violator" of JPCO Secs. 7-173 and 7-175, for feeding cats outside at various times of the day from her property, in violation of the consent order. A written order was signed by Hearing Officer Cusimano on November 28, 2023. In that order, Ms. Fayard was adjudged to have violated JPCO Secs. 7-173 and 7-175, and was (1) ordered to immediately cease and desist feeding cats outside of her property

---

[3] Specifically, the notice of violation contained the following:

> These proceedings could result in penalties being levied against you and a lien being placed against the above referenced property; therefore, you have the right to be represented by an attorney. Your failure to attend this hearing is an admission of liability and may result in additional legal action being initiated against you and will not cure [sic] this hearing to be postponed.

located at 1405 Zuma Avenue in Metairie, Louisiana; (2) fined $500.00; and (3) assessed costs of $250.00. Additionally, Ms. Fayard was allowed to keep nine cats inside of her residence that were each required to be collared and tagged, and ordered to allow representatives of JPAWS to perform quarterly inspections of her property to ensure compliance for a period of two years.

Following the hearing, Ms. Fayard retained counsel and filed a Petition for Appeal of the hearing officer's decision in the Twenty-Fourth Judicial District Court for the Parish of Jefferson on November 29, 2023. Both Ms. Fayard and the Parish submitted briefing. On August 1, 2024, the trial court issued judgment upholding and affirming the BAA's November 15, 2023 ruling, and November 28, 2023 written order, in its entirety. The trial court issued written reasons for judgment on August 7, 2024. The trial court issued an amended judgment on December 4, 2024, to include the requisite decretal language.

Ms. Fayard thereafter timely filed the instant appeal.

**ASSIGNMENTS OF ERROR**

On appeal, Ms. Fayard contends that: (1) her constitutional rights were violated due to (a) inadequate notice to prepare a defense, (b) lack of a meaningful opportunity to be heard, and (c) lack of a jury of her peers; (2) she was incorrectly charged with violation of an ordinance that does not encompass her alleged conduct; and (3) she was incorrectly charged as a third-time offender.

**DISCUSSION**

**I.    Applicable Law and Standard of Review**

A party aggrieved by a final agency decision in an adjudication is entitled to have that decision reviewed by the district court of the parish in which the agency is located. La. R.S. 49:978.1(A) and (B); *Blake v. Louisiana State Bd. of Prac. Nurse Examiners*, 24-165 (La. App. 5 Cir. 10/30/24), --- So.3d ---, 2024 WL 4630720 *3. The agency shall submit to the reviewing court the original or

certified copy of the entire record of the administrative proceeding under review unless stipulated to the contrary by the parties. La. R.S. 49:978.1(D); *Matter of Ford v. Louisiana State Bd. of Prac. Nurse Examiners*, 22-481 (La. App. 5 Cir. 4/26/23), 361 So.3d 1200, 1206. A party aggrieved by the district court's decision is entitled to appeal to the appropriate appellate court. La. R.S. 49:979. An appellate court reviews the findings and decision of the administrative agency, not the decision of the district court. *Matter of Ford*, 361 So.3d at 1206 (citing *Sylvester v. City of New Orleans Through Code Enforcement and Hearings Bureau*, 17-283 (La. App. 4 Cir. 10/11/17), 228 So.3d 285, 287). Consequently, our appellate review is *de novo*, without regard for the decision of the trial court. *Spears v. Louisiana Bd. of Practical Nurse Examiners*, 16-587 (La. App. 5 Cir. 6/15/17), 223 So.3d 679, 688.

La. R.S. 49:978.1(G) sets forth the exclusive grounds upon which a reviewing court may reverse or modify an administrative agency's decision on appeal. That statute provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported or sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determinations and conclusions of fact by a preponderance of evidence based upon its own

> evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

*See also Spears v. Louisiana Bd. of Practical Nurse Examiners*, 223 So.3d at 687.

Any one of the six bases enumerated in La. R.S. 49:978.1(G) is sufficient to modify or reverse an agency determination. *Blanchard v. Allstate Ins. Co.*, 99-2460 (La. App. 1 Cir. 10/18/00), 774 So.2d 1002, 1004, *writ denied*, 01-285 (La. 3/23/01), 787 So.2d 997.

Nevertheless, given the jurisprudential presumption of correctness of an agency's actions, the appellant bears the burden of proving that the record contains no facts that would establish validity of the charges levied against her. *Spears*, 223 So.3d at 688. If a reasonable interpretation of the evidence supports the agency's determination, the agency's decision is accorded great weight and will not be reversed or modified in the absence of a clear showing that the action was arbitrary or capricious. *Westbank Pharmacy of Belle Chase, LLC v. Louisiana Bd. of Pharmacy*, 23-1268 (La. App. 1 Cir. 5/31/24), 391 So.3d 66, 69.

Jefferson Parish Code of Ordinances ("JPCO"), Sec. 7-173 provides, in pertinent part:

> (a) It is unlawful for any person having ownership, custody, or control of any animal to cause, allow, permit, either willfully or by failure to exercise due care, in any of the following, defined as a public nuisance or contained in this Chapter and is prohibited as set forth herein:
>
> 1. *Disposal of Waste*. Any animal that defecates in public or private property without the property owner's consent shall immediately remove and dispose of the excrement from any such place to a site not prohibited by law.
>
> ***
>
> 3. *Destruction of Property*. Any domesticated animal which enters upon private property or public property,

so as to damage or destroy any real or personal property of another is prohibited.

4. *Confinement.* Animals are to be properly controlled or contained, in a carrier or on a leash, when on public or private property unless the property owner consents for the animal to run loose within the confines of the property or the animal is in a designated animal park or location allowing free range. …

(b) Any person having ownership, custody, or control of any animal found to be in violation of this section may be issued a citation and guilty of a nuisance.

Jefferson Parish Code of Ordinances ("JPCO"), Sec. 7-175, pertaining to

"Violations; Citations; Hearings; Penalties" provides, in pertinent part:

(a) Upon receipt of a nuisance complaint and verification by a humane officer or law enforcement agent of such nuisance, a reasonable attempt shall be made to notify the person with ownership, custody, or control of the animal in question to inform them of the nuisance complained of and that a nuisance complaint has been received, and may issue a citation to said person(s).

(b) Upon receipt of a second complaint within a 12-month period, from any person, including the original complainant, a humane officer or law enforcement agent, without further warning, shall issue a citation to the owner and/or person with custody or control of the animal or animals causing the nuisance.

(c) Upon receipt of a third complaint within a 12-month period, from any person, including the original complainant, a humane officer or law enforcement agent, without further warning, shall issue a violation notice to the owner and/or person with custody or control of the animal or animals causing the nuisance, in lieu of a citation, and the matter will be set for hearing.

(d) Any third or subsequent violation shall subject the person to the cost of the hearing plus fines pursuant to this code if found to be in violation by the trier of fact.

***

(f) Any person issued a citation for nuisance shall be fined as follows: twenty-five dollars ($25.00) for a first offense; one hundred dollars ($100.00) for a second offense and for a third or subsequent offense within a 12-

month period pursuant to section 1-10 and/or section 1-11 of this Code.

(g) Persons issued a citation shall have the right to pay the fine or to request a hearing. Should the person request a hearing, said person, if found to be in violation, shall bear the cost of the hearing.

***

(i) In cases where a violation notice has been issued upon a third or subsequent verified nuisance complaint and a public nuisance is found to exist, the administrative hearing officer may order

(1) A reduction in the number of animals kept by an owner, or require whatever reasonable restrictions in the keeping of animals he may deem necessary to eliminate or mitigate a public nuisance;

(2) Neutering/spaying of the animal;

(3) Microchipping;

(4) Other reasonable penalties including contempt for failing to timely comply with an order or judgment[.]

With these legal precepts in mind, we now turn to the issues Ms. Fayard has raised on appeal.

## II. Whether Ms. Fayard's Constitutional Rights Were Violated

In her first assignment of error, Ms. Fayard contends that her due process rights were violated due to inadequate notice and a lack of a meaningful opportunity to be heard. Appellant further argues that her due process rights were violated because she did not receive a jury trial of her peers.

### A. *Sufficiency of Notice*

Ms. Fayard argues that the errors in the notice she received, which stated, "[u]nder penalty as provided by law, you are hereby commanded to appear at a hearing pursuant to LSA R.S. 13:2575 and Jefferson Parish Ordinance No. 18860 relative to the above-mentioned violation(s)[,]" created a situation wherein she unduly exposed herself to an administrative hearing that was wholly invalid in its execution. Specifically, Ms. Fayard contends that "[b]y commanding her to appear

as if she had received a third citation . . . wherein she was only receiving her second citation, Jefferson Parish issued a notice with materially incorrect information." We disagree.

Jefferson Parish Code of Ordinances Sec. 7-175(c) does not state that a violation notice shall be given to the owner, *in lieu* of a citation, and that the matter will be set for a hearing when the owner receives a third *citation*, as suggested by Ms. Fayard. Rather, Section 7-175(c) explicitly states that a hearing will be set and a notice violation given to the owner when a third *complaint* is received within a 12-month period. Here, the record shows that between August 2022 and August 2023, JPAWS received three verified nuisance *complaints* that Ms. Fayard's cats were creating a public nuisance. Thus, contrary to Ms. Fayard's contention, she was not "improperly commanded" to appear for an administrative hearing "that she would have otherwise not attended" and, instead, simply paid a fine. Instead, because JPAWS had received three verified nuisance *complaints* within a 12-month period, pursuant to JPCO Sec. 7-175(c), JPAWS was mandated to issue Ms. Fayard a notice of violation, and an administrative hearing before the BAA was required.

Ms. Fayard next argues that she received insufficient notice of the violation with which she was charged such that her right of due process was violated. Specifically, Ms. Fayard avers the only alleged offensive conduct she was aware of prior to the hearing involved the feeding of the cats, and that it was not until the actual hearing on November 15, 2023 that she became aware of the additional allegations of "defecation, and property destruction" caused by her cats. Thus, she concludes that the notice she received was legally insufficient to satisfy due process.

It is well-settled that the notice given by an administrative agency need only be reasonable and need not meet the exacting requirements for notice in judicial

proceedings.  *Sales 3060, L.L.C. v. Louisiana Motor Vehicle Com'n*, 07-432 (La. App. 5 Cir. 12/11/07), 976 So.2d 188, 193.  Such notice must serve the purpose of informing the parties of the purpose and time of the proceedings, the possible consequences or the manner in which interests may be affected, and the method of presenting objections to the administrative action.  *Id.*  Ms. Fayard does not dispute that the notice properly provided the time, date, and location of the hearing.  Instead, she argues the notice was insufficient because it did not provide adequate information as to the alleged violations.  The record shows that the hearing notice Ms. Fayard received clearly listed the date of violation as August 25, 2023.  The notice also cited JPCO Sec. 7-173, Animals creating a public nuisance, and specified that it was her cats creating the public nuisance.  The notice further referenced JPCO Sec. 7-175, which sets forth how violations of Section 7-173 are penalized.  Ms. Fayard obviously received the notice as evidenced by her appearance and participation at the November 15, 2023 hearing.  We agree with the trial court judge who found that the notice provided to Ms. Fayard was legally sufficient in that it properly apprised her of the time, date, and location of the BAA hearing, as well as identified the alleged ordinances that she was accused of violating.  No additional information in the notice was required.

### B. *Meaningful Opportunity to be Heard*

Ms. Fayard contends that she was not given a meaningful opportunity to be heard at the administrative hearing.  She argues that, despite the hearing notice specifically stating that "you have the right to be represented by an attorney," she appeared *pro se* at the hearing, as she claimed she "had been informed by the staff at the Bureau of Administrative Adjudication that she did not need an attorney for this proceeding."  She contends that this "led to three separate instances wherein [she] was not provided the opportunity to be meaningful heard" by the hearing officer: (1) she was interrupted by the hearing officer when she was cross-

examining Layla Chandler; (2) the hearing officer stopped her from conducting her cross-examination of Ms. Bourgeois; and (3) the hearing officer prevented her altogether from cross-examining Ms. Bullard.

Cross-examination is the principal means by which believability and truthfulness of a witness' testimony are tested. *State v. Bell*, 23-85 (La. App. 5 Cir. 10/31/23), 374 So.3d 986, 997. The three main functions of cross-examination are (1) to shed light on the credibility of the direct testimony, (2) to bring out additional facts related to those elicited on direct, and (3) to bring out additional facts which tend to elucidate any issue in the case. *State ex rel. Nicholas v. State*, 520 So.2d 377, 380 (La. 1988); *State v. Nash*, 475 So.2d 752, 754-755 (La. 1985). The trial court has discretionary power to control the nature, extent and character of the examination of witnesses, provided the court does not deprive a defendant of his right to effective cross-examination. *State v. Hawkins*, 96-766 (La. 1/14/97), 688 So.2d 473, 479. Lastly, there is no duty on an administrative hearing officer to assist a party in developing the record. *Cranford v. Louisiana State Bd. of Practical Nurse Examiners*, 08-209 (La. App. 4 Cir. 10/1/08), 996 So.2d 590, 606.

Ms. Fayard concedes that once counsel for the Parish concluded its questioning of Ms. Layla Chandler, the Animal Care Administrative Clerk for the Humane Division, the hearing officer provided Ms. Fayard with the opportunity to cross-examine Ms. Chandler. However, the hearing transcript indicates that, instead of asking Ms. Chandler any questions, Ms. Fayard "responded in declarative statements," which she acknowledged in brief, and asked the hearing officer "to reconsider taking the cats from her," as Ms. Chandler had recommended during her testimony. Ms. Fayard argues that, despite Hearing Officer Cusimano's acknowledgement of her lack of understanding as to how she was to proceed, instead of guiding her in the process, he advised that he was going to let the opposing counsel speak. Ms. Fayard contends that once she made "one more

declarative statement," the hearing officer concluded her cross-examination of Ms. Chandler. She avers that due to her confusion regarding the proper course of action, she was not given an opportunity to be meaningfully heard in relation to her cross-examination of Ms. Chandler.

As to the witness, Ms. Christina Bourgeois, a resident of 1305 Zuma Street, who made one of the nuisance complaints against Ms. Fayard, Ms. Fayard acknowledges in brief that she interrupted opposing counsel's questions of the witness. She further concedes that the hearing officer prompted her to begin her cross-examination of Ms. Bourgeois, after opposing counsel had completed her questioning on direct. The record reflects that instead of asking Ms. Bourgeois any questions, Ms. Fayard requested to see a photograph produced by Ms. Bourgeois during her testimony. And, rather than questioning Ms. Bourgeois about the photograph, Ms. Fayard began to argue with the witness about whether she was actually feeding the cats. At that point, the record indicates that the hearing officer instructed Ms. Fayard to discontinue arguing and advised her that the witnesses claimed to have video evidence of her actually feeding the cats at another address. Due to her arguing with the witness, and potentially committing perjury if allowed to continue doing so, the hearing officer advised Ms. Fayard to "stop," and then he allowed the Parish to move on to its next witness. According to Ms. Fayard, because she was interrupted by the hearing officer and told to stop speaking, she was not provided an ample opportunity to cross-examine Ms. Bourgeois.

Regarding the third witness, Melissa Bullard, Ms. Fayard contends that she was completely deprived of any cross-examination of this witness. However, the record shows that immediately after counsel for the Parish concluded its questioning of Ms. Bullard, Ms. Fayard, asked, "Can I say something now?" to which the hearing officer responded, "In a few minutes, ma'am. You are going to give your closing statements ..." Counsel for the Parish then introduced its

evidence into the record, at which time the hearing officer stated to Ms. Fayard, "All right. Yes, ma'am. What do you have in rebuttal?" While we would agree with Ms. Fayard that cross-examination is not a "rebuttal of a witness' testimony," a review of the hearing transcript shows that at no time did Ms. Fayard request to cross-examine or question Ms. Bullard. Instead, our review of the transcript suggests that rather than question Ms. Bullard, Ms. Fayard was ready to move on in order that she could testify as to her own version of events, which the hearing officer allowed her to do.

Based on our review of the hearing transcript, we find it does not support Ms. Fayard's contention that she was denied her due process right to cross-examination of the witnesses who testified against her. To the contrary, we find the transcript shows that she was provided a meaningful opportunity to be heard and was given a fair opportunity to cross-examine the witnesses. The fact that she chose not to exercise that right does not mean that she was not afforded an opportunity to do so. The transcript further reveals that at the commencement of the hearing, Hearing Officer Cusimano spoke directly to Ms. Fayard about the accusations lodged against her and gave her the opportunity to explain, which she did. Later in the hearing, when the witnesses' testimony began to contradict the explanation Ms. Fayard had originally provided, and she proceeded to argue with the witnesses, the hearing officer admonished her to stop talking so as to prevent her from committing perjury. Further, once the witnesses finished testifying, Ms. Fayard was given a second opportunity to explain her version of events.

It is clear from the comments made by the hearing officer throughout the hearing that he had empathy for Ms. Fayard and did not wish to take her cats away from her, which is what the Parish was requesting, and what JPAWS was recommending. In the end, Hearing Officer Cusimano, whom we find was courteous, patient, and helpful to Ms. Fayard throughout the proceedings, issued an

order that held Ms. Fayard accountable for her actions without depriving her of her cats.

## C. *Jury of Her Peers*

In her last due process claim, Ms. Fayard contends that she was deprived of her constitutional right to a jury of her peers, in violation of the Seventh Amendment to the United States Constitution. In support of her position, Ms. Fayard cites to the United States Supreme Court's recent decision in *Security Exchange Commission v. Jarkesy*, --- U.S. ---, 144 S.Ct. 2117, 219 L.Ed.2d 650, which she contends held that "the Seventh Amendment of the United States Constitution is applicable in Administrative Hearings wherein a civil financial penalty is assessed." We find that Ms. Fayard's reliance on *Jarkesy* is misplaced.

First, we note that the protections afforded by the Seventh Amendment, ensuring the right to civil trials "according to the rules of the common law," is one of the few rights contained in the Bill of Rights which has not been made applicable to the states through the Fourteenth Amendment as a fundamental right of due process. *Arshad v. City of Kenner*, 11-1579 (La. 1/24/12), 95 So.3d 477, 481. Rather, the Seventh Amendment is directly applicable only to the federal government. *Id*. Similarly, there is no provision in our state constitution guaranteeing the right to a civil jury trial. *Id*. Second, *Jarkesy* involved defendants that were prosecuted through a federal administrative hearing for violating federal securities laws, and who were assessed a $300,000.00 penalty. Here, Ms. Fayard was not found to be in violation of a federal law, but rather, was found to have violated a parish ordinance by a local parish administrative agency, and was assessed a $500.00 fine and ordered to pay court costs of $250.00. In short, *Jarkesy* is not applicable to the instant case and Ms. Fayard was not entitled to a jury trial.

In sum, we find no merit to Ms. Fayard's claims that her due process rights were violated by insufficient notice, inability to cross-examine witnesses, or by deprivation of a jury trial by her peers.

### III. Whether Ms. Fayard's Conduct Created a Public Nuisance in Violation of JPCO Sec. 7-173

In her second assignment of error, Ms. Fayard avers that her conduct of feeding the cats is not one of the expressly enumerated nuisance violations found in the animal public nuisance ordinance of Jefferson Parish and that nothing in the JPCO grants an agency of the Parish the authority to invent or expand ordinances that are not explicitly present within the Code of Ordinances. In particular, Ms. Fayard states that the Notice of Hearing that she received stated, "Violation: ANIMALS SHOULD NOT CREATE A PUBLIC NUISANCE BY DISTURBING THE PEACE, more specifically: The cats were a public nuisance." She argues that JPCO Sec. 7-173, as set forth above, is clear and unambiguous about the feeding of animals and that "the idea of feeding cats is not captured within this specific penalized ordinance in any capacity." According to Ms. Fayard, JPCO Sec. 7-173 is specific and contains no ambiguous language, and that pets can only become a nuisance through one or all of the four enumerated ways, none of which includes the act of "feeding." Thus, Ms. Fayard argues that the hearing officer erroneously "manufactur[ed] … a consequence of conduct" within the ordinance that is not explicitly or implicitly contained therein when he found that her feeding of her cats created a public nuisance.

Ms. Fayard further points out that JPCO Sec. 7-127 actually commands the owner of an animal to feed that animal, as often as the feeding habits of the animal requires. Consequently, Ms. Fayard argues that she should not be held liable under JPCO Sec. 7-173, as to do so would "create a situation where pet owners would be liable for both feeding their pets and not feeding their pets." Put simply, according

to Ms. Fayard, she has wrongfully been held liable for conduct that is not contained in the ordinance she has been adjudicated to have violated.

The Parish responds that JPCO Sec. 7-173 provides four ways in which an animal can become a public nuisance, and that during the November 15, 2023 hearing, three of those four ways were proven to have been caused by Ms. Fayard's improper feeding of cats. Specifically, under JPCO Sec. 7-173, an animal is a public nuisance if it: defecates on public or private property without the property owner's consent and the waste is not immediately removed or disposed of; enters upon private or public property, so as to damage or destroy any real or personal property of another; or, is not properly controlled or contained, in a carrier or on a leash, when on public or private property unless the owner consents. *See* JPCO Sec. 7-173(a)(1), (3), and (4). According to the Parish, the testimony of the witnesses and the evidence presented at the hearing established that Ms. Fayard's cat feeding caused the cats to become a public nuisance. We agree.

The testimony at the hearing was that Ms. Fayard's feeding of her cats resulted in the accumulation of animal waste on her neighbor's property. Specifically, Ms. Bourgeois testified that Ms. Fayard's feeding of cats, invariably enticing those cats onto her property, has resulted in those cats defecating, urinating, and digging up her yard to the point that she has had to re-sod her lawn on multiple occasions. There was no testimony indicating that Ms. Fayard ever attempted to clean up the cat's waste or that she received permission from Ms. Bourgeois for the cats to remain on her property. We find Ms. Fayard's feeding of cats outside of her property created a public nuisance, in violation of JPCO Sec. 7-173(a)(1) and (a)(3), because the cats defecated and urinated on private property without the owner's consent and Ms. Fayard did not immediately remove or dispose of the waste, and because the accumulation of cat feces and digging up the yard caused damage to Ms. Bourgeois' lawn.

Ms. Chandler testified that JPAWS had multiple photographs and videos sent to it showing Ms. Fayard feeding cats on other people's property. Both Ms. Bourgeois and Ms. Bullard testified that they have personally witnessed Ms. Fayard continuously feeding cats at more than one house other than her own, which Ms. Fayard actually admitted to occasionally doing, although she claimed to have had permission. To the contrary, neither Ms. Bourgeois nor Ms. Bullard testified that they had ever given Ms. Fayard permission for her cats to be on their property. Thus, we find that Ms. Fayard's feeding of cats "outside of her property" created a public nuisance, in violation of JPCO Sec. 7-173(a)(4), because they were not confined.

Based on our review of the record, we find the hearing officer correctly determined that the evidence and testimony presented at the hearing sufficiently established that Ms. Fayard's feeding of cats created a public nuisance in violation of JPCO Sec. 7-173(a)(1), (3), and (4). This assignment of error is without merit.

**IV.    Whether the Parish misapplied JPCO Sec. 7-175**

In her final assignment of error, Ms. Fayard argues that the Parish misapplied JPCO Sec. 7-175, set forth above in pertinent part, when it held Ms. Fayard liable for a second offense, but penalized her as if it were her third offense. We disagree.

Jefferson Parish Code of Ordinances Sec. 7-175 sets forth the manner in which JPAWS is required to address public nuisance complaints. When JPAWS receives a nuisance complaint and it is verified, it is to make reasonable attempts to notify the owner, inform him of the nuisance complaint, and may issue a citation. JPCO Sec. 7-175(a). Upon receiving a second complaint within a 12-month period, JPAWS must issue the owner a second citation. JPCO Sec. 7-175(b). If JPAWS receives a third complaint within a 12-month period, it is mandated to issue a violation notice to the owner, *in lieu* of a citation, and the matter will be set

for a hearing. JPCO Sec. 7-175(c). Ms. Fayard repeatedly refers to her only having committed a second violation and, thus, she should have had the option of either requesting a hearing or paying a fine. JPCO Sec. 7-175(g). However, JPCO Sec. 7-175(c) is clear that when a third verified nuisance *complaint* is received by JPAWS within a 12-month period, simply paying a fine *in lieu* of attending a hearing is no longer an available option. In such circumstances, attendance at a hearing is required. JPSO Sec. 7-175(c), (d) and (i).

The evidence and testimony presented at the hearing established that JPAWS had received three verified nuisance complaints within a 12-month period, and thus, Ms. Fayard was properly treated as a third-time offender under JPCO Sec. 7-175(c). JPAWS received the first complaint regarding Ms. Fayard's cats creating a nuisance on August 23, 2022. An animal control officer spoke with Ms. Fayard on September 9, 2022, about the feeding of the cats creating a public nuisance in violation of JPCO Sec. 7-173, and issued her a warning citation. On October 28, 2022, an animal control officer went to Ms. Fayard's home, but no one was there, however, multiple cats were seen inside and outside of the property. Multiple piles of cat food, and bowls of food and water, were observed and photographs were taken. A notice of JPCO violation was posted at the property and a citation was issued by code enforcement for a violation of JPCO Sec. 7-173. On December 5, 2022, JPAWS conducted a compliance check and observed non-compliance in that cat food was observed in the front yard. On February 25, 2023, JPAWS received a second complaint, which included video evidence of Ms. Fayard walking down the street to properties other than her own and feeding cats. A third complaint was received by JPAWS on August 23, 2023, submitted with video evidence showing Ms. Fayard walking past the complainant's driveway to feed cats in another neighbor's driveway. An animal control officer was dispatched to the property and observed food left out atop a chair with bugs

crawling through it. This was the third verified complaint received by JPAWS within a 12-month period regarding Ms. Fayard's feeding of cats creating a public nuisance. Thus, because it had received three verified complaints of a public nuisance within a 12-month period, in accordance with JPCO Sec. 7-175(c), JPAWS was required to issue a violation notice to Ms. Fayard and to set the matter for an administrative hearing before the BAA.

Further, the record shows that Ms. Fayard appeared for an administrative adjudication hearing before the BAA on December 14, 2022. Rather than dispute the allegations derived from the public nuisance complaint and the evidence obtained as a result of the compliance checks conducted by JPAWS, finding Ms. Fayard to have continued to feed cats outside of her property and leaving food in various places outside, Ms. Fayard entered into an agreement with the Parish, which was memorialized in a consent order signed on December 20, 2022. In that order, Ms. Fayard agreed to allow JPAWS to inspect both the front and back yards to verify compliance in regards to the specific feeding times set forth therein. Additionally, the consent order provided that "[t]he violations on this property may subject [Ms. Fayard] to repeat offender provisions of the [JPCO] resulting in additional/increased penalties for future violations."

While Hearing Officer Cusimano did state, when assessing fines and penalties, that this was Ms. Fayard's second violation, considering the record as a whole, specifically the prior consent order, we agree with the Parish that the hearing officer was referring to Ms. Fayard being a repeat offender, and was not referring to the number of complaints lodged against her (which was clearly three, not including the failed compliance checks). Ms. Fayard admitted at the November 15, 2023 hearing that she was not in compliance with the December 20, 2022 consent order, and additional evidence was presented at the hearing confirming that Ms. Fayard had violated the consent order. Consequently, Ms.

Fayard was, in fact, a repeat offender and Hearing Officer Cusimano was correct in penalizing her as such pursuant to JPCO Sec. 1-11(c), which provides that "[a]ny person … found to be a repeat offender pursuant to the provisions of this Code may be fined a maximum of one thousand dollars ($1,000.00) per violation, along with any other applicable fines or fees …" Moreover, the hearing officer was well within his authority and discretion under JPCO Sec. 2.5-6(5) to "[t]ake necessary and lawful measures to effect corrections of the violations if the violator fails to do so within the time allocated by the hearing officer." In that regard, Hearing Officer Cusimano was authorized under JPCO Sec. 7-175(i)(1) to limit the number of cats Ms. Fayard is allowed to keep and to restrict those cats to being inside cats, and to prohibit Ms. Fayard from feeding cats outside of her home, all of which he "deem[ed] necessary to eliminate or mitigate a public nuisance."

We find that the record supports the hearing officer's treatment of Ms. Fayard as a three-time offender pursuant to JPCO Sec. 7-175(c), as well as a repeat offender under the prior consent order in accordance with JPCO Sec. 1-11(c). This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court, which affirmed the November 28, 2023 ruling of the Bureau of Administrative Adjudication.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 26, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-432**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
R. CHRISTOPHER COX, III (DISTRICT JUDGE)
PIERRE W. MOULEDOUX (APPELLANT)          ROBERT T. GARRITY, JR. (APPELLANT)          JOURDAN J. MOHAMAD (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED